

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
MAR 03 2015
ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TENAX AEROSPACE HOLDINGS, LLC             PLAINTIFF

v.             CIVIL ACTION NO. 1:15cv04HSO-JCG

CONAIR GROUP, INC.
1462400, INC.
AERO-FLITE, INC.
FALKO REGIONAL AIRCRAFT US, LLC and
FORTRESS INVESTMENT GROUP, LLC             DEFENDANTS

## COMPLAINT - *Jury Trial Requested*

Tenax ("Tenax") complains of Conair Group, Inc., ("Conair"), 1462400, Inc. ("146"), Aero-Flite, Inc. ("Aero-Flite"), Falko Regional Aircraft US, LLC ("Falko"), and Fortress Investment Group, LLC ("Fortress"), and for causes of action would respectfully show the following:

### Parties and Subject Matter Jurisdiction

1. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 (a) (3), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." In the alternative, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 (a) (1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. None of the defendants are citizens of the State of Mississippi, nor are any of them "citizens or subjects of

a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the" State of Mississippi.

    A.    Tenax is a Mississippi limited liability company. All of its members are individual residents and citizens of the State of Mississippi. Tenax is, therefore, a "citizen" of the State of Mississippi within the meaning of 28 U.S.C. § 1332(a)(1), and of no other State.

    B.    Conair is a corporation, and a "citizen or subject of a foreign state," to wit, Canada, within the meaning of 28 U.S.C. § 1332 (a) (3). Its principal place of business is in the Canadian Province of British Columbia.

    C.    146 is a corporation. Per 28 U.S.C. § 1332(c)(1) it is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" *Hertz Corp. v. Friend,* 559 U.S. 77, 80 (2010) (quoting section 1332). 146 has been incorporated in the State of Delaware, and in no other State. Its principal place of business is in a State other than the State of Mississippi. 146 is therefore, a "citizen" of the State of Delaware, and perhaps of another State other than the State of Mississippi, within the meaning of 28 U.S.C. § 1332(a)(1).

    D.    Aero-Flite is a corporation. Per 28 U.S.C. § 1332(c)(1) it is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" *Hertz Corp. v. Friend,* 559 U.S. 77, 80 (2010) (quoting section 1332). Aero-Flite has been incorporated in the State of Wyoming, and in no other State. Its principal place of business is in the State of Arizona because the State of Arizona is "the place

where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz, supra,* 559 U.S. at 80. Aero-Flite is therefore, a "citizen" of the State of Delaware and of the State of Arizona within the meaning of 28 U.S.C. § 1332(a)(1), and of no other States.

E. Falko is a Delaware limited liability company. All of its members are individual residents and citizens of the State of Delaware. Falko is, therefore, a "citizen" of the State of Delaware within the meaning of 28 U.S.C. § 1332(a)(1), and of no other State.

F. Fortress is a Delaware limited liability company. All of its members are individual residents and citizens of the State of New York. Falko is, therefore, a "citizen" of the State of New York within the meaning of 28 U.S.C. § 1332(a)(1), and of no other State.

**Personal Jurisdiction**

2. This Court has personal jurisdiction over each of the defendants pursuant to the Mississippi "Long Arm" statute, Miss. Code Ann. § 13-3-57, because, as more fully set forth below, each such defendant (a) entered into a contract with a resident of this State, Tenax, and said contract was to be performed in whole or in part in this State; and/or (b) committed a tortious act in whole or in part in this State against a resident of this State; and/or (c) does business and has performed work and/or services in this State. *See generally ITL Int'l, Inc. v. Constenla, S.A.,* 669 F.3d 493, 498 (5th Cir. Miss. 2012) ("As it stands now, the [Mississippi] long-arm statute, by its plain terms, applies to

any person or corporation performing any character of work in this state.") (footnotes and internal quotation marks omitted).

### Service of Process

3. Conair may be served with process by serving an officer or other responsible person at its headquarters, Conair Group Inc., 1510 Tower Street, Abbotsford, BC B2T 6H5, Canada.

4. 146 may be served by serving its registered agent for the service of process, The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

5. Aero-Flite may be served with process by serving C T Corporation System, 1712 Pioneer Avenue 120, Cheyenne, Wyoming 82001.

6. Falko may be served by serving its registered agent for the service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

7. Fortress may be served by serving its registered agent for the service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

8. Each of the defendants is a "person outside this state" within the meaning of Miss. R. Civ. P. 4(c) (5). As such, by virtue of F. R. Civ. P. 4(e)(1), each may be served "by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested" to its home address, as shown above.

## Facts

9. Tenax is a Mississippi-based aerospace company, specializing in leasing missionized, special-purpose aircraft to Government entities and private companies, mostly in support of federal Government missions. One particular area of Tenax expertise is in acquiring and leasing aircraft to be contracted to the U.S. Forest Service for use in aerial firefighting. Tenax, in partnership with Conair's affiliate, 146, owns various firefighting aircraft. These are leased to a Conair affiliate, Aero-Flite; Aero-Flite in turn uses them to fight fires on behalf of the U.S. Forest Service.

10. Among other things, Tenax has pioneered the use of the "Superscooper," an amphibious water bomber made by Bombardier:



In 2013, for example, Aero-Flite won a $57-million dollar Forest Service contract to provide an amphibious, scooping, 1,600 gallon capacity aircraft for a period of five years. *See* October 29, 2013 *Fire Aviation,* "USFS awards scooper contract to Aero-Flite," http://fireaviation.com/2013/10/29/usfs-

awards-scooper-contract-to-aero-flite/ (last accessed February 23, 2015). Aero-Flite filled this contract with a Tenax-sourced Bombardier Superscooper.

11. On or about August 29, 2014, Tenax, 146, and related parties entered into an agreement which, speaking in general terms, (a) obligated 146 to make an initial $7.5 million payment to Tenax; and (b) gave 146 the option, upon payment of an additional $25 million, to acquire Tenax's 70% interest in the partnership, and require Tenax to exit large segments of the aerial firefighting business.

12. 146 made the initial $7.5 million payment to Tenax. It then sought financing for the $25 million payment, so that it could complete the acquisition of Tenax's interest in the partnership. Both 146 and Tenax knew that any prospective lender would reasonably require 146 to share details of Tenax and the partnership's business model and plans for expansion, including, without limitation, proprietary partnership information regarding the partnership's cost basis in Superscoopers, lease calculations, operating expenses, operating revenues, markets, and the like – in short, all of the information necessary to compete against Tenax and the partnership. All such information is referred to hereafter as "the Confidential Information."

13. Because of the obvious potential for misuse of the Confidential Information, 146 had a duty to take reasonable steps to see that the Confidential Information was kept confidential; disclosed only in so far as reasonably necessary to secure financing for the $25 million additional payment; and even then, disclosed only in such a way, and to such persons,

and under such terms and/or circumstances as would prevent its misuse, and protect Tenax's interests. Alternatively, 146 expressly or impliedly agreed that it would do so; and/or represented to Tenax that it would do so; and/or voluntarily undertook to do so.

14. Falko, which is controlled by Fortress, is also in the aircraft leasing business, but in countries other than the United States. 146 approached Falko about financing the $25 million second payment, and for the sole and exclusive purpose of allowing Falko to evaluate this proposal, shared the Confidential Information with Falko. Falko, despite knowing that the Confidential Information had been shared with it for this one purpose, converted the Confidential Information to its own business use. Armed with the Confidential Information, Falko took steps to enter into competition with Tenax and 146 for contracts with the U.S. Forest Service for aerial firefighting in the United States. With the benefit of the Confidential Information, Falko contracted with Bombardier to acquire all available Superscooper aircraft manufactured, or to be manufactured, by Bombardier in the next several years. Tenax has made a reasonable offer to Falko regarding such aircraft, but Falko has refused same.

### Count One – Falko – Conversion

15. Tenax incorporates here the facts alleged above.

16. The Confidential Information was never given or sold to Falko; it was, instead, merely entrusted to Falko for a limited, agreed and understood purpose. Instead of returning the Confidential Information intact and unused

when that purpose had been served, or no longer could be served, Falko converted it to its own use, in derogation of the rights of Tenax, all to Tenax's damage.

### Count Two – Falko – Breach of Contract

17. Tenax incorporates here the facts alleged above.

18. In order to receive the Confidential Information, Falko expressly or impliedly agreed to use it for a limited, agreed and understood purpose. Tenax was a known, intended third-party beneficiary of that agreement, which Falko breached, to Tenax's damage.

### Count Three – Falko – Negligence

19. Tenax incorporates here the facts alleged above.

20. Falko received the Confidential Information under circumstances that imposed upon it a duty to use reasonable care to guard it, and to use it only for a limited, agreed and understood purpose. Alternatively, Falko voluntarily undertook to do so, and thus came under a duty to do so. Falko breached this duty, all to Tenax's damage.

### Count Four – Falko – Unfair competition

21. Tenax incorporates here the facts alleged above.

22. In taking the actions described above, Falko unfairly entered into competition with Tenax, all to Tenax's damage.

### Count Five – Falko – Attempted monopolization

23. Tenax incorporates here the facts alleged above.

24. In taking the actions described above, Falko attempted to establish an illegal monopoly in the use of Bombardier Superscoopers for the U.S. Forest Service aerial firefighting market, all to Tenax's damage.

### Count Six – Falko – Tortious interference with Contract

25. Tenax incorporates here the facts alleged above.

26. In taking the actions described above, Falko interfered, wrongfully, maliciously, and without right or privilege, in the Settlement Agreement, all to Tenax's damage. Without limitation, but for Falko's conduct, 146 would have obtained financing, and made the $25 million payment to Tenax, or the Tenax-146 partnership would have continued profitably, expanding the use of Bombardier Superscoopers in the service of the U.S. Forest Service aerial firefighting market, and other markets.

### Count Seven – Falko – Tortious interference with business relations

27. Tenax incorporates here the facts alleged above.

28. In taking the actions described above, Falko interfered, wrongfully, maliciously, and without right or privilege, in the 146- Tenax relationship, all to Tenax's damage. Without limitation, but for Falko's conduct, 146 would have obtained financing, and made the $25 million payment to Tenax, or the Tenax-146 partnership would have continued profitably, expanding the use of Bombardier Superscoopers in the service of the U.S. Forest Service aerial firefighting market, and other markets.

### Count Eight – Falko – Tortious interference with prospective business advantage

29. Tenax incorporates here the facts alleged above.

30. In taking the actions described above, Falko interfered, wrongfully, maliciously, and without right or privilege, in the Tenax's reasonable prospects to expand the use of Bombardier Superscoopers in the service of the U.S. Forest Service aerial firefighting market, and other markets, all to Tenax's damage.

### Count Nine – Falko – Misrepresentation

31. Tenax incorporates here the facts alleged above.

32. Throughout its dealings with 146, Falko misrepresented its intentions, affirmatively and/or through the use of misleading statements. Falko intended, or at least forsaw, that those misrepresentations would reach Tenax, and that Tenax would rely on them by not directing or requesting 146 to cease dealing with Falko. Tenax did in fact so rely, reasonably, to its damage.

### Count Ten – 146 – Negligence

33. Tenax incorporates here the facts alleged above.

34. 146 had, or voluntarily undertook, a duty to take reasonable steps to guard the Confidential Information, and to see that it was not misused. 146 breached this duty, all to Tenax's damage.

### Count Eleven – 146 – Breach of Contract

35. Tenax incorporates here the facts alleged above.

36. 146 expressly or impliedly agreed to take reasonable steps to guard the Confidential Information, and to see that it was not misused. 146 breached this agreement, all to Tenax's damage.

### Count Twelve – 146 – Misrepresentation

37. Tenax incorporates here the facts alleged above.

38. 146 misrepresented to Tenax what it would do with the Confidential Information, affirmatively and/or through the use of misleading half-truths. 146 intended, that Tenax would rely on those misrepresentations, by not directing or requesting 146 to cease dealing with Falko. Tenax did in fact so rely, reasonably, to its damage.

### Count Thirteen – Falko and Fortress – Joint and Several Liability

39. Tenax incorporates here the facts alleged above.

40. At all times material, Falko was the agent of Fortress, acting within the scope of its agency; and/or was counseled, encouraged, directed, aided and/or abetted by Fortress; and/or conspired with Fortress. As such Fortress is jointly and severally liable for Falko's conduct. Likewise, Fortress was the agent of Falko, acting within the scope of its agency; and/or was counseled, encouraged, directed, aided and/or abetted by Falko; and/or conspired with Falko. As such Falko is jointly and severally liable for Fortress's conduct.

### Count Fourteen– 146, Conair, and Aero-Flite– Joint and Several Liability

41. Tenax incorporates here the facts alleged above.

42. At all times material, 146, Aero-Flite, and Conair were each the agent of the other, acting within the scope of its agency; and/or each counseled, encouraged, directed, aided and/or abetted the other; and/or conspired with each other. As such each is jointly and severally liable for the other's conduct.

**Count Fifteen – Aero-Flite – Tortious interference with business relations**

43.   Tenax incorporates here the facts alleged above.

44.   Aero-Flite, under the direction of Conair, shared with Falko the confidential and proprietary information, belonging to Tenax, that it possesses. It did so without authority and without notice to Tenax, with the knowledge that doing so would harm Tenax.  In taking the actions described above, Aero-Flite interfered, wrongfully, maliciously, and without right or privilege, in the 146- Tenax relationship, all to Tenax's damage.

**Count Sixteen — Aero-Flite – Tortious interference with prospective business advantage**

45.   Tenax incorporates here the facts alleged above.

46.   In taking the actions described above, Aero-Flite interfered, wrongfully, maliciously, and without right or privilege, in the Tenax's reasonable prospects to expand the use of Bombardier Superscoopers in the service of the U.S. Forest Service aerial firefighting market, and other markets, all to Tenax's damage.

**Count Seventeen – All Defendants – Punitive Damages**

47.   Tenax incorporates here the facts alleged above.

48.   All defendants acted with the intent to harm Tenax, or with knowledge that harm to Tenax was substantially certain, or with reckless indifference to the risk of harm to Tenax.  Their conduct was such that the imposition of punitive damages is necessary to punish them and to deter others from like misconduct.

WHEREFORE, premises considered, TENAX prays that Conair, 146, Aero-Flite, Falko, and Fortress will be cited to appear and answer herein, and that Tenax will be granted judgment against them, jointly and severally for actual damages, punitive damages, prejudgment and post-judgment interest, costs of court, and such other or further relief, in law or equity, as to which Tenax may be justly entitled.

          Respectfully submitted,

          */s/ M. Frey, by /s/ C. Calloway (MB 4388), with permission*
          Phil B. Abernethy, (MB #1023)
          Robert M. Frey, (MB #5531)

          ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

BUTLER SNOW LLP
1020 Highland Colony Parkway
Post Office Box 6010
Ridgeland, MS 39158-6010
Telephone: (601) 948-5711
Facsimile: (601) 985-4500

ButlerSnow 24923603v2